UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
_____x

UNITED STATES OF AMERICA,


v.                                                    Case No.: 23-65 (BRM)


IBRAHEEM MUHAMMAD,

                    Defendant.

_____x




## PRETRIAL MOTIONS BY
## DEFENDANT IBRAHEEM MUHAMMAD

Jacqueline E. Cistaro
Law Offices of Jacqueline E. Cistaro
125 Half Mile Road, Suite 200
Red Bank, NJ 07701
(T): 732.642.0598
(F): 646.224.9618
(E): JEC@cistarolawfirm.com

**PRELIMINARY STATEMENT**

This case arises out of an investigation by the East Orange Police Department into the possession and distribution of narcotics and related offenses by Ibraheem Muhammad.  Allegedly, in April 2022, the East Orange Police Department ("EOPD"), and specifically Detective Felix Cabrera ("Det. Cabrera"), was informed by a confidential informant ("CI") that an African American individual that goes by the name of Ibraheem Muhammad was engaged in the distribution of narcotics and resided at 9 William Street, East Orange, New Jersey.  The CI allegedly stated that the target was approximately 6'0, 180 lbs., medium brown skin, and full beard with a bald head, between 38-40 years old, and drove a blue Volkswagen Sedan.  Notably, according to police records, Mr. Muhammad is 5'6 and 120 lbs.

Upon receiving this information, the EOPD conducted an internal investigation.  Det. Cabrera allegedly set up three (3) controlled buys on separate redacted dates, times, and some locations.  The first controlled buy included an unrecorded consensual call and a meeting at Mr. Muhammad's residence located at 9 William Street, East Orange, New Jersey.  The second and third controlled buys included unrecorded consensual calls, meetings at redacted dates, times, and locations, wherein the CI was instructed to schedule a meeting time and location to connect with Mr. Muhammad and conduct narcotics transactions.  These calls were alleged to be conducted in the presence of Det. Cabrera and his partner, Det. J. Boutsikaris.  All of the police reports fail to memorialize the details of the amount(s) of narcotics requested

during the consensual calls, the amounts and/or the denominations of the U.S. currency provided by the EOPD to the CI, and/or the quantity of drugs purchased by the CI from Ibraheem Muhammad.  Moreover, the three (3) controlled buys, including the surveillance, were also not recorded by means of photographs, audios, videos, and/or body-worn cameras, or any other detailed recordation of the events.

After the three so-called controlled purchases of narcotics from Ibraheem Muhammad, the EOPD obtained a search warrant of the premises located at 9 William Street, East Orange, New Jersey, and a 2012 blue Volkswagen bearing Pennsylvania registration LSZ1628.  This is a multi-apartment residence.  The affidavit in support of the search warrant was based upon the controlled buys from the earlier redacted dates, times, and some locations.  During the search warrant, the EOPD found various narcotics and a firearm.

Pursuant to Rule 16, the government failed to produce the chain of custody of these transactions (money and narcotics) and/or the recordation of the evidence from each of the controlled buys (narcotics).  It appears that there are no photographs of the drugs or documentation itemizing the chain of custody of the transactions prior to the execution of the search warrant.  All of the police reports are dated May 11, 2023, after the investigation had concluded and execution of the search warrant had been executed.  Interestingly, the execution of the search warrant was thoroughly recorded (reports, video, chain of custody), yet the controlled buys – even in a redacted

format—were not recorded in this case.  Nor was the so-called surveillance by Dets. Cabrera and Boutsikaris during this investigation.

Notably, all documentation and evidence, including the police reports, narcotics, and the firearm that were prepared, tagged, was submitted into evidence on May 10, 2022, and after the search warrant of the apartment was executed in this case.  No documentation of the prior controlled buys exists in this case.

On May 9, 2022, after the execution of the search warrant, Ibraheem Muhammad was arrested by the EOPD and charged with possession and distribution of narcotics and related offenses in Essex County Complaint Number W-2022-0009890-991.

On or about September 27, 2022, the United States Attorney's Office superseded jurisdiction of this case and filed a complaint in *United States of America v. Ibraheem Muhammad*, 23 Cr. 00065 (JM), charging the defendant with possession with intent to distribute CDS and possession of a firearm in furtherance of a drug trafficking operation and related offenses.  *See* Dkt. 1.

The complaint was supported by and affirmed/attested to in "Attachment B" by Anthony T. Rogers, Task Force Officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  *See* Dkt. 1.  However, it appears that the complaint fails to identify Task Force Officer Anthony Rogers to be a member of the East Orange Police Department and on loan to the ATF.  The same police department and narcotics unit that appears to be involved in this case.

Notably, the EOPD, specifically the same members of this narcotics unit, have been allegedly and previously accused of falsifying reports and records, manufacturing evidence, and suborning perjury in past cases. TFO Rogers appears to be a member of the same police department and narcotics unit, who was alleged to have falsified documents and search warrants and attempted to obtain perjury from a fellow police detective in the same narcotics unit of this department.

On January 23, 2023, in *United States v. Ibraheem Muhammad*, 23 Cr. 00065 (KM), the government filed an indictment alleging possession of a firearm and narcotics possession and distribution related offenses. *See* Dkt. 10.

We respectfully request additional discovery, including bill of particulars, grand jury minutes, *Brady* and *Giglio*, the disclosure of the identity of the CI. We further respectfully request leave to file supplemental motions in this case.

## STATEMENT OF FACTS

In April 2022, Det. Cabrera, of the EOPD, allegedly received information from a CI that Ibraheem Muhammad was in possession and distributing narcotics in/around/from 9 William Street, East Orange, New Jersey. According to the EOPD and the government, Det. Cabrera documented this report on May 11, 2022—weeks or perhaps a month after this initial report by the CI and no other registration report exists. Det. Cabrera claims the CI provided the target's name as Ibraheem Muhammed, the address of 9 William Street, Apt. 3, East Orange, and the description of the target to be an African

American male, approximately 6'0, 180 lbs., medium brown skin with full beard and a bald head.  *See* USAO000102.  But, according to Ibraheem Muhammad's criminal history, dated May 10, 2022, Mr. Muhammad is only 5'6 and 120lbs.  *See* USAO000150-158.

### A.    *First Controlled Buy*

On an unknown date (redacted) and no description of the time of day (night or day), Dets. Cabrera and Boutsikaris met with the CI and "advised him/her of a plan" for a controlled buy.  *See* USAO000104.  The report states that Det. Cabrera searched the CI and provided the CI with "paper U.S. currency" in an unknown amount or denomination(s) from the EOPD Narcotics Fund.  *See Id.*  No documentation or photographs of the money provided to the CI was produced to the defense.

The report further states that the CI contacted Mr. Muhammad via cell phone and that the detectives overheard the conversation.  However, this report fails to state the details of that conversation, including the amount of money provided to the CI, the amount of narcotics requested by the CI, and/or the amount of narcotics obtained by the CI from Ibraheem Muhammad.  *See* USAO000104.

Allegedly, the CI was transported to 9 William Street, East Orange, New Jersey and dropped off at an undisclosed location near 9 William Street.  Det Cabrera affirms/attests in his report that he observed the CI hand "the previously provided money." USAO000104.  The detectives never observed the defendant hand the CI "narcotics."  Det. Cabrera further claims that the CI

returned to the detectives for de-briefing with an unknown amount of narcotics.  To the defense's knowledge, there is no report, photographs of the narcotics, or chain of custody of evidence obtained from the transaction with Ibraheem Muhammad on the redacted date/time.  *See Id.*

Pursuant to the defendant's request, on July 18, 2023, the government advised that there's no photographs, audios and/or videos, body-warn camera and/or any other documentation to memorialize these so-called narcotics transactions.  *See* Exhibit "A"

### B.     *Second Controlled Buy*

On an unknown date and time (redacted), with no description of the time of day (night or day), Det. Cabrera met with the CI and again "advised a plan" for a controlled buy.  The report states that Det. Cabrera searched the CI and provided the CI with "paper U.S. currency" in an unknown amount or denomination(s) from the EOPD Narcotics Fund.  *See* USAO000105.  Again, no documentation of the money provided to the CI was produced to the defense.

The report further states that the CI contacted Mr. Muhammad via cell phone and that the detective overheard the conversation.  However, this report fails to state the amount of money provided to the CI, the amount of narcotics requested by the CI, and/or the amount of narcotics obtained by the CI from Ibraheem Muhammad.  *See* USAO000105.  The report indicates that Det. Boutsikaris was surveilling Mr. Muhammad's residence at 9 William Street, East Orange, New Jersey, where he observed Mr. Muhammad leaving his residence to meet with the CI and conducted a narcotics transaction.

According to Det. Cabrera, he was positioned in a location "to afford a clear and unobstructed view of the CI" as s/he walked toward Mr. Muhammad and handed the defendant U.S. currency.  *See Id.*  From an unknown distance or time of day, the detective allegedly observed the defendant reach into a dark colored fanny pack within the vehicle to "retrieve [a] small item and handed [it] to the CI" in the vehicle.  *See Id.*  The defense submits the following questions: How could the detectives see in the vehicle?  According to the police report, the CI claimed that the defendant reached into a dark colored fanny pack, retrieved CDS, and handed the CDS to the CI.  How is this possible?

Yet, the report by Det. Cabrera claims that the "CI was seen handing [Mr. Muhammad] the previously provided money."  *See Id.*  However, the "previously provided money" was never documented in any report or photograph.  *See* USO000105-106.  There's no report submitted by Det. Cabrera that the same money (unknown denominations) was provided to the defendant by the CI nor any report submitted by Det. Boutsikaris regarding his surveillance of the same money provided to the defendant.  Det. Cabrera further claims that the CI returned to the detectives for de-briefing with narcotics, but there's no report, photographs of the narcotics, or chain of custody of evidence obtained from the transaction with Ibraheem Muhammad.  *See Id.*

Again, this transaction allegedly occurred in a vehicle, from an unknown distance, during an unknown time (day or night) and unknown weather conditions.  No other information is provided in the reports.  *See* USAO000105-106.

In sum, the defense respectfully requests the date, time of day, and location of the transaction and location of the detectives in order to send our investigator to review and evaluate the location.

### C.   *Third Controlled Buy*

On an unknown date and time (redacted), with no description of the time of day (night or day), Det. Cabrera met with the CI "and a plan was devised to purchase narcotics."  *See* USAO00017.  The report states that Det. Cabrera searched the CI and provided the CI with "paper U.S. currency" in an unknown amount or denomination(s).  The report further states that the CI contacted Mr. Muhammad via cell phone and that the detective claims to have overheard the conversation.  However, this report fails to state the amount of money provided to the CI, the amount of narcotics requested by the CI, and/or the amount of narcotics obtained by the CI.  *See* USAO00017.  The report indicates that Det. Boutsikaris was surveilling Mr. Muhammad's residence and followed the defendant to an unknown location.  The report by Det. Cabrera claims that the CI was observed to have walked toward the passenger side of the blue Volkswagen, engaged in a brief conversation, and handed the defendant "previously provided money."  However, the "previously provided money" was never documented in any report or photograph.  *See* USO000107.  The report further alleged that Mr. Muhammad reached into a glove compartment of the vehicle and handed a small item to the [CI].  *See Id.*  Det. Cabrera further claims that the CI returned to the detectives for de-briefing with narcotics, but

there's no report, photographs of the narcotics, or chain of custody of evidence obtained from the transaction with Ibraheem Muhammad.  *See Id.*

On May 2, 2022, Det. Cabrera and other government officials obtained a search warrant for the premises of 9 William Street, East Orange, New Jersey, and a 2012 blue Volkswagen bearing Pennsylvania registration LSZ1628.  *See* USAO000134-143.

The defense has good faith concerns regarding the EOPD's veracity in this investigation and a good faith basis to move for the requests herein.  The EOPD is notoriously known to provide untruthful information in reports and affidavits in support of probable cause to obtain search warrants as well as perjured testimony during pretrial hearings and trial.

Additionally, we respectfully request that the Court permit the defense to obtain the identity of the confidential informant and conduct an investigation of the confidential informant.  The defense respectfully requests that this Honorable Court require the government to produce all documents in connection with the engagement agreement(s) and/or cooperation agreement(s) and/or immunity agreement(s), registration and case file(s), and police reports and affidavit(s) noting the reliability of the "confidential informant," including confidential informant registration number and case file(s), prior case docket numbers of engagement(s), cooperation and/or immunity agreement(s), pretrial and trial hearing transcripts, and/or any other documentation relating to the confidential informant in this case under "Attorneys Eyes Only (AEO)."

Alternatively, the defense would respectfully request that the Court order the requested documentation be provided *in camera* for review by this Honorable Court.

## I.  **MOTION TO DISCLOSE CONFIDENTIAL INFORMANT**

On or about the month of April 2022, the EOPD allegedly received information from a CI regarding the illegal sales of narcotics.  Each and every police report memorializing the investigation of this case are dated the same date of Mr. Muhammad's arrest – more than a month after the so-called investigation began in this case.  The defense has requested, via electronic mail, additional Rule 16 materials and was advised that the documents do not exist.  Therefore, the EOPD states that no such previous police reports exist in this case.  However, the same detectives, specifically Detective Cabrera, who is the lead detective in this case, has been alleged to have been involved in falsifying information in reports and search warrant(s).

In his police report, dated May 11, 2022, Det. Cabrera affirmed that this CI has been deemed reliable without any further information concerning prior reliability, trustworthiness, and/or prior cases.  Nor do we know the CI's registration number, current status as a CI (or paid informant), and/or prior criminal history.  Det. Cabrera simply stated that this "CI was deemed reliable after previously providing reliable information resulting in the identification and arrest of several violent narcotics offenders."  *See* USAO000102.  All of this information is memorialized in a report dated the same date that the defendant was arrested, and at least a few weeks or at minimum a month after the EOPD

received the so-called information from the CI.  After further inquiry by defense counsel, the government advised that no initial reports, nor additional information was available to produce pursuant to Rule 16.  Moreover, this report was reviewed and signed by Sgt. Robert Wright.  *See* USAO000102. Therefore, the Court and all parties are just left to believe Det. Cabrera's representation.

The defense submits that, if the investigation pre-dates the defendant's arrest, and an investigation began on or about April 2022, with the initial "received information by a [reliable and previously utilized] confidential informant" then a police report and registration report should have been prepared in conjunction with this information.  *Compare* USAO_000102.

The police report further states that the description of Ibraheem Muhammad to be 6'0, 180 pounds, and medium brown skin in the complexion with a full beard and bald head, to be between 38 – 40 years of age.  *Id.*  Again, these details are very specific in description and nature, yet no other police reports exists for an entire month prior to the police reports produced in this case and pursuant to Rule 16.  Further, these details appear to be so specific that they are an after the fact memorialization of the events in this case—and dated the same date that the defendant was arrested.

Again, more importantly, the defendant's criminal records indicates that Ibraheem Muhammad is 5'6 and 120 lbs. as opposed to the description by the CI of the defendant as 6'0, 180 lbs.

## A.   ARGUMENT

The privilege to withhold the identity of an informer is not absolute. "While such disclosure is required, where an informer's identity, or…the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," *United States v. Johnson*, 677 F.3d 138 (3d Cir. 2012) *citing Roviaro v. United States*, 353 U.S. 53 (1957) (internal citation omitted), "the burden to demonstrate the need for disclosure rests on the defendant." *United States v. Jiles*, 658 F.2d 194, 197 (3d Cir. 1981).

There are three (3) types of cases in which the court must evaluate a motion for disclosure of the identity of a confidential informant.  First, the court may be presented with an extreme situation…in which the informant played an active and crucial role in the events underlying the defendant's potential criminal liability.  In these cases, disclosure and production of the informant will in all likelihood be required to ensure a fair trial." *Id.* at 197. Second, the court must evaluate cases where the informant was not an active participant or eyewitness, but merely a tipster in the illegal activity.  Third, the facts and circumstances involve an eyewitness to the events, but was not a participant in the illegal activity. *Id.*

In order to determine the disclosure of the identity of the confidential informant the Court must apply a two-prong test: (1) the court must determine the type of case, and (2) the court must balance the defendant's interest in disclosure against the government's interest in maintaining the confidentiality

of its informant.  *See United States v. Roviaro*, 353 U.S. 62, 77 S.Ct. at 628; *see also McCray v. Illinois*, 386 U.S. 300, 308 (1967).

Because disclosure is required where the informant was an actual participant of the crime for which the defendant is being charged and the defendant's interest in a fair trial overrides any balancing inquiry by the government, we submit that Ibraheem Muhammad falls into the first category of cases.  *See Roviaro*, 353 U.S. 53, 60 - 61 (1957):, 353 U.S. 53, 77 S. Ct. 623 (finding disclosure of identity where confidential informant was active participant in illegal activity charged by government and sales was observed by agent); *see also United States v. Barnett*, 418 F. 2d 309 (6 Cir. 1969) (agent and informer together transacted sale of whiskey from defendant); *United States v. Lloyd*, 400 F. 2d 414 (6 Cir. 1968) (defendant sold drugs to informant while agents observed, despite a three-month delay between offense and arrest, and defendant alleged lack of memory); *Lopez-Hernandez v. United States*, 394 F. 2d 820 (9 Cir. 1968) (informer and agent met with defendant at border and transacted sale of heroin); *Portomene v. United States*, 221 F. 2d 582 (5 Cir. 1955) (defendant sold narcotics to informer who was the only other participant); *United States v. Conforti*, 200 F. 2d 365 (7 Cir. 1952), cert. den. 345 U.S. 925, 73 S. Ct. 782, 97 L. Ed. 1356 (1953) (defendant sold and delivered counterfeit money to informer who was the only other participant); *Sorrentino v. United States*, 163 F. 2d  627 (9 Cir. 1947) (defendant sold opium to informer who was the only other participant).

More importantly, this is not the first time that Det. Cabrera or the EOPD's veracity has been questioned or challenged relating to the engagement of a CI or other witnesses, including police report(s) and allegations of falsifying a factual basis in affidavit(s) to obtain a search warrant. Recently, in *United States of America v. Ethrice Hampton*, 20 Cr. 00493 (KM), the defense moved for and was granted a Frank's hearing. In that case, Det. Atiba Amoroso learned that Det. Cabrera lied about his presence at a narcotics surveillance location and his observation of a controlled buy on a particular date and time. Det. Amoroso communicated these events to his attorney—who also communicated these events to the government. Det. Amoroso provided a statement to the U.S. Attorney's Office. *See* "Exhibit B." Det. Amoroso also refused to lie about the events that occurred during the investigation and provided testimony, under oath and before a jury. *See* "Exhibit C." In that case, Det. Cabrera was accused of asking him to lie and perjure himself during a suppression hearing relating to non-existent surveillance and controlled buys with a so-called CI. Detective Cabrera stated, in his own words, "This is how it goes" and "this is how we do things." This is a police department that operates as an "Old Boys Club" where rules and the constitution do not matter. *See* "Exhibit D."

## II.   <u>MOTION FOR BILL OF PARTICULARS</u>

Federal Rule of Criminal Procedure 7(f) permits the defendant, Ibraheem Muhammad, to request the production of a bill of particulars where vagaries on the face of an indictment "significantly impair the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989). *See also Urban*, 404

F.3d at 771; *United States v. DePaoli*, 41 Fed. App'x 543, 546 (3d Cir. 2002); *Singer*, 58 F.2d at 76; *United States v. Davidoff*, 845 F.2d 1151, 1155 (2d Cir. 1988) (holding that the district court erred in refusing to grant bill of particulars which was vital to defendants' understanding of charges against them and to their preparation of a defense); *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (same).   Motions for bills of particulars are "addressed to the sound discretion of the trial court." *Wong Tai v. United States*, 273 U.S. 77, 80-81 (1927).   That discretion is abused where the lack of information leads to a defendant's inability to adequately prepare a defense, avoid a trial by surprise, and avoid the risk of double jeopardy.   *United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012).

Mr. Muhammad is entitled to "be informed of those central facts which would enable him to conduct his own investigation."   *United States v. Gatto*, 746 F. Supp. 432, 477 (D.N.J. 1990) (quoting *United States v. Johnson*, 524 F. Supp. 199, 207 (D. Del. 1981), *rev'd on other grounds*, 690 F.2d 60, 66 (3d Cir. 1982)).   A bill of particulars, by design, supplements an indictment and thus enables a defendant to, *inter alia*, adequately prepare a defense, avoid unfair surprise at trial, and avoid double jeopardy based on ambiguously charged conduct.   *See generally DePaoli*, 41 Fed. App'x at 546 (noting a bill of particulars' purpose is to "inform the defendant of the nature of the charges against him"); *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (stating that a bill of particulars "is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation"); *United States v. Adams*, 759 F.2d 1099, 1113 (3d Cir. 1985) (reiterating that a bill of particulars is appropriate when a "deprivation of the information sought leads to the defendant's inability to

adequately prepare his care, to avoid surprise at trial, or to avoid the later risk of double jeopardy"); *United States v. Murray*, 297 F.2d 812, 819 (2d Cir. 1962) ("The function of a bill of particulars is to enable the accused to prepare for trial and to prevent surprise.").

Rule 7(f) was specifically amended to encourage courts to take a more liberal stance toward applications for bills of particulars. *Rosa*, 891 F.2d at 1066 ("[M]otions for a bill of particulars should be granted whenever an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to a prejudicial surprise at trial.").  In the spirit of this liberal view, the Third Circuit noted that a defendant's request for a bill of particulars on legitimate information may not be denied merely because providing the information would divulge details of the government's evidence. *Addonizio*, 451 F.2d at 64 n.16; *see also United States v. Wynn*, 54 F.R.D. 72, 74 (E.D. Pa. 1971) ("[F]undamental fairness and the spirit of the amendment to Rule 7(f) require that the defendant be informed of the identity of persons" with whom defendant engaged in alleged illegal conduct.).

## III.   **MOTION TO COMPEL:**

Pursuant to Rule 16, the defendant request the following:

1.   Text messages by and between all law enforcement officers during the alleged transactions and surveillance.

2.   The cell phone numbers and subscriber information of all law enforcement officers involved in this investigation.

3.    All documents relating to the disbursement of the U.S. currency by the EOPD Narcotics Unit or any other unit involved in this investigation and provided to any individual involved in this investigation.

4.    Any and all results from the investigation resulting in field test reports and the results of the field test results, including reports of the events surrounding the field test, the name and title of the field test officer, the manner in which the field test was conducted, the chain of custody of the field test, the results of the field test, the documentation of the field tests, reports, memoranda, memo book entries, chain of custody reports, photographs, videos, and/or any other evidence in this case.

## IV.    REQUEST FOR GRAND JURY TRANSCRIPTS

Mr. Muhammad should be afforded the opportunity to review the grand jury transcripts to determine whether the government improperly used the "grand jury's investigative powers for the purpose of securing additional evidence against the defendant for use in the upcoming trial." *In re Grand Jury Proceedings*, 632 F.2d at 1041.

### A.    The Applicable Legal Standard

The production of grand jury transcripts is governed by Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), which states in pertinent part that:

> [t]he court may authorize disclosure -- at a time, in a manner, and subject to any other conditions that it directs – of a grand jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury ....

The Third Circuit has set forth the standard that a party must meet to establish the grounds for disclosure under Rule 6(e):

> To support a motion for a judicially ordered disclosure

of grand jury testimony, a party must show a particularized
need for that information which outweighs the public
interest in secrecy. [ ] Once such a need is shown, the
district court must weigh the competing interests and
order so much disclosure as needed for the ends of justice.
[ ] In balancing the competing interests, the district
court necessarily is infused with substantial discretion.
[ ] This court must analyze a district court's decision to
disclose grand jury information only to determine if there
was an abuse of that discretion.

*United States v. Coplin*, 15 Fed. Appx. 492, 2002 WL 3292543, at *1 (3d Cir.

Dec. 5, 2005) (quoting *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir.

1989) (alterations in original)).

## V.   THE COURT SHOULD CONDUCT A HEARING PURSUANT TO RULE 104

The Court should conduct a hearing pursuant to Rule 104(c)(3) to
examine good faith issues relating to the chain of custody of the central
pieces of evidence in this case – the narcotics allegedly purchased from
Ibrahem Muhammad by the CI and provided to the East Orange Police
Department.  The CI allegedly made three (3) separate controlled purchases
of narcotics from Mr. Muhammad in this case.   The East Orange Police
Department did not memorialize significant details relating to the controlled
buy transactions in a report.   Specifically, the reports fail to provide the
amount of U.S. currency provided to the CI prior to each of the controlled
buys, the amounts of narcotics allegedly requested by the CI during an
unrecorded consensual call, or the purchased amount(s) of narcotics by the
CI from the defendant.  *See* USAO000104-107.  The East Orange Police
Department did not photograph, video, or make a record of the U.S.
currency or narcotics during any of these transactions.  The police reports

of these transactions were created after the search warrant was conducted and evidence was seized from 9 William Street, East Orange City, New Jersey.  Moreover, a property/evidence report was not created for any of the narcotics purchased during the three (3) controlled buys in April 2022. According to the production of Rule 16 discovery, all of the narcotics were submitted on May 10, 2022—the day after the search warrant was executed—with no chain of custody documentation.  *See* USAO000120-129. It also appears that the narcotics were not received by the New Jersey State Police Office of Forensic Sciences laboratory for analysis

Traditionally, the chain of custody of evidence is a question of weight rather than admissibility. *United States v. Clark*, 425 F.2d 827, 833 (3d Cir. 1970).  However, the admissibility of evidence can be challenged in cases where the "gaps may render a chain of custody so deficient that exclusion is required." *United States v. Rawlins*, 606 F.3d 73, 82-83 (3d Cir. 2010).  This is one such case.

Where the chain of custody of the evidence is so questionable and because the authenticity of the information gleaned therefrom is so central to the government's case, it is imperative that pursuant to Rule 12(B)(C)(3), (E), the Court address this issue by conducting a Rule 104 hearing to assess these chain of custody defects.

Federal Rule of Evidence 104(c) states:

> The court must conduct any hearing on a preliminary question so that the jury cannot hear it if:
>
> > (1)  the hearing involves the admissibility of a confession;

> (2)   a defendant in a criminal case is a witness and so requests;
> or
>
> (3)   justice so requires.

Fed. R. Evid. 104(c). Mr. Muhammad submits that, given this case relies heavily on the evidence allegedly obtained from the alleged controlled purchases thereby providing the probable cause for a search warrant, justice requires precisely such a hearing.   Indeed, courts have granted hearings pursuant to Rule 104(c)(3) where, as here, a party has raised significant issues regarding the use of certain evidence at trial.   *See, e.g.*, *Rezac Livestock Commission Co., Inc. v. Pinnacle Bank*, Case No. 15-4958-DDC, 2019 WL 7116086, *2 (D. Kan. Dec, 23, 2019) (granting hearing under Rule 104(c)(3), noting that "'justice requires' a hearing of the evidence … and how plaintiff will use that evidence … outside the presence of the jury, before the court can determine its admissibility").

Of course, physical evidence must be authenticated before it is admitted at trial. "[A]n object connected with a crime must be shown to be in substantially the same condition as when the crime was committed before it can be admitted." *Clark,* 425 F.2d at 83.   Authenticity is elemental to relevance, for "evidence cannot have a tendency to make the existence of a disputed fact more or less likely if the evidence is not that which its proponent claims[.]" *United States v. Branch,* 970 F.2d 1368, 1370 (4th Cir. 1992).   "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).   "Establishing a chain of custody is one form of proof sufficient to support a finding that the matter in question is what its proponent claims." *United States v. Mendel*, 746 F.2d 155, 166 (2d Cir. 1984). *See also United*

*States v. Howard–Arias*, 679 F.2d 363, 366 (4th Cir. 1982) ("The chain of custody rule is but a variation of the principle that real evidence must be authenticated prior to its admission into evidence.").

While evidence is not automatically rendered inadmissible because of a break in the  chain of custody, "serious gaps may render a chain of custody so deficient that exclusion is required." *Rawlins,* 606 F.3d at 82-83 (citing *United States v. Mejia*, 597 F.3d 1329, 1336 (D.C. Cir. 2010) (a brief gap between defendant's arrest and taking possession of the evidence makes it less plausible that it was planted, tampered with, or misidentified)).  In ordinary cases, gaps in  the chain go to the weight of the evidence, not its admissibility.   *Clark*, 425 F.2d at 833 (noting that the trial court properly instructed the jury regarding the weight of the evidence when defendant challenged chain of custody relating to which officer transported narcotics containers bearing defendant's fingerprints to the crime lab).   Unlike typical cases, the present case does not implicate a short gap in time or other reasonable circumstance when considering chain of custody, complete lack of memorialization of the controlled buys, and prior allegations of false statements, misrepresentations, and manufactured evidence by the same detectives of the East Orange Police Department.

WHEREFORE, the Defendant, Ibraheem Muhammad, moves for the foregoing and respectfully requests leave to file supplemental and/or additional motion(s) if necessary and/or appropriate.

Dated:  January 9, 2024

Respectfully submitted,

s/ Jacqueline E. Cistaro
Jacqueline E. Cistaro, Esq.
Law Offices of Jacqueline E. Cistaro
125 Half Mile road, Suite 200
Red Bank, NJ 07701
(T): 732.642.0598
(E): JEC@cistarolawfirm.com